USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 11/9/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

WILLIAM BAEZ,

                Defendant.

No. 17-CR-618-05

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

On September 30, 2020, Defendant William Baez filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking compassionate release in light of the COVID-19 pandemic. Dkt. 320 ("Def. Mot."). Baez, who is currently incarcerated at the Metropolitan Detention Center in Brooklyn, New York ("MDC"), suffers from underlying health conditions that place him at a heightened risk for severe harm from COVID-19. The Government does not dispute that Baez "has proffered a basis for the Court to find that extraordinary and compelling reasons for release exist," but opposes his motion on the ground that the seriousness of his underlying criminal conduct outweighs any justification for early release. Dkt. 322 ("Gov't Opp."). For the reasons that follow, Baez's motion is granted. Not only is Baez's release justified by those extraordinary and compelling reasons, it is also consistent with the factors set forth in 18 U.S.C. § 3553(a).

## BACKGROUND

On September 6, 2018, Baez pleaded guilty to conspiracy to distribute and possess with intent to distribute a thousand kilograms or more of marijuana, and conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). On April 12, 2019, this Court sentenced Baez to the mandatory minimum term of 120 months' imprisonment. Baez is presently incarcerated at the MDC.

On September 30, Baez filed the instant motion seeking compassionate release, arguing that his "medical conditions, coupled with the conditions of his confinement, place him at great risk of contracting COVID-19, and suffering severe complications." Def. Mot. at 3. Citing data from the Centers for Disease Control and Prevention ("CDC"), Baez avers that the combination of his two underlying conditions—obesity and hypertension—places him at a significantly increased risk of hospitalization, and death, from COVID-19. *Id.* at 3. He urges that the inadequate handling of the pandemic at the MDC exacerbates his risk of exposure to the virus, particularly in light of his position in the "cadre unit," which involves daily contact with numerous inmates and staff members. *See id.* at 10-11. Baez further maintains that his extraordinary efforts at rehabilitation since his incarceration, the non-violent nature of his criminal conduct, and his strong community ties weigh in favor of a sentence reduction. *See id.* at 17, 20.

On October 8, the Government opposed Baez's motion. Without disputing that Baez had both exhausted his administrative remedies and proffered legitimate medical reasons for release, the Government argues that these conditions do not "outweigh the Section 3553(a) factors" in light of the serious nature of Baez's criminal conduct. Gov't Opp. at 3. The Court disagrees.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a court may "reduce the term of imprisonment" where (1) "extraordinary and compelling reasons warrant such a reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The Court of Appeals for the Second Circuit recently held that nothing in "the now-outdated version of Guideline § 1B1.13[] limits the district court's discretion" to grant or deny a motion for a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

Rather, the First Step Act "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at 237. "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 238 (quoting 28 U.S.C. § 994(t) (emphasis in *Brooker*)).

## DISCUSSION

Baez argues that the significant risk for severe harm from COVID-19, when considered in light of the conditions of his incarceration at MDC, constitutes an extraordinary and compelling reason for release. Baez is 34 years old and suffers from both obesity and hypertension. The link between obesity and complications from COVID-19 is now, nearly eight months into the pandemic, well-known. The CDC warns that "obesity may triple the risk of hospitalization due to a COVID-19 infection" and that "[a]s BMI increases, the risk of death from COVID-19 increases." Dkt. 320-6, 320-7. Hypertension, like obesity, increases the likelihood that Baez would suffer irreversible harm, were he exposed to the virus. Baez appended to his motion numerous studies that indicate that hypertension increases one's risk of severe illness from COVID-19. *See* Dkt. 320-19, 320-20, 320-21, 320-22, 320-23. His hypertension is currently going untreated. *See* Dkt. 324 at 2. Baez's medical conditions thus render him more likely to suffer a severe and potentially fatal case of COVID-19, if contracted. Moreover, according to a CDC study included with Defendant's motion, someone with comorbidity, *i.e.*, the simultaneous presence of two underlying conditions, is at a significantly greater risk for hospitalization from COVID-19 than someone with only one such condition. The Government does not dispute Baez's medical conditions or the risks they present in the context of the pandemic. *See* Gov't Opp. at 2.

The Court's concerns about Baez's health are amplified by the conditions of his incarceration. Although the Court recognizes the significant efforts undertaken by the Bureau of Prisons ("BOP") to respond to COVID-19, *see* Gov. Opp. at 5, the challenges of containing the spread of the virus among the United States prison population are well-documented. *See, e.g., United States v. Rodriguez*, No. 17-CR-157 (VEC), 2020 WL 3051443, at *2 (S.D.N.Y. June 8, 2020) (describing the "heightened risk" of spreading COVID-19 as "inherent to a carceral setting"); *United States v. Park*, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020) ("The nature of prisons – crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products – put those incarcerated inside a facility with an outbreak at heightened risk."). The MDC is no exception to this unfortunately reality. In fact, a number of judges in this District have granted motions for compassionate release based in part on the conditions in that facility. *See, e.g., United States v. Smith*, 454 F. Supp. 3d 310, 312 (S.D.N.Y. 2020); *Rodriguez*, 2020 WL 3051443.

The Court is further concerned that the current surge of COVID-19 cases in the United States intensifies the danger that Baez will contract the virus while incarcerated. According to the BOP, which maintains updated data on the spread of the coronavirus in federal facilities, there are currently seven confirmed active cases of COVID-19 at the MDC, three among staff members and four among the inmate population. *See* www.bop.gov/coronavirus/ (last accessed Nov. 9, 2020). The Court notes that the number of infections at the facility has more than doubled in the weeks since the Government submitted its opposition to Baez's motion. *See* Gov't Opp. at 5 (citing three active cases among staff and none in the inmate population). COVID-19 is again spreading rapidly in the United States, including in New York City. *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19): United States COVID-19 Cases and Deaths by State*

4

(Nov. 9, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html. As a second wave of infection hits the New York area, the likelihood increases that nearby prisons and jails will become hotspots, putting vulnerable people like Baez at grave risk of irreversible harm. The Court finds that this confluence of circumstances is sufficiently extraordinary and compelling to release Baez into home confinement.

Consideration of the § 3553(a) factors further counsels in favor of compassionate release. When deciding a motion for sentencing reduction, "[a]pplication of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release and whether compassionate release would undermine the goals of the original sentence." *United States v. Daugerdas*, No. 09-CR-581, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations and internal quotation marks omitted). Among the pertinent factors to balance are the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense," "to provide just punishment for the offense," "to protect the public from further crimes of the defendant," "to provide the defendant with needed educational or vocational training, [or] medical care" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

Judges within the Second Circuit have granted motions for compassionate release on the basis that these sentencing factors support the reduction of a defendant's sentence. *See, e.g., United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *1 (S.D.N.Y. Apr. 6, 2020) (reducing life sentence to time served for "first-time offender" convicted of "lead[ing] [] a large-scale narcotics distribution organization" based in part on defendant's rehabilitation and sentencing disparities with co-defendants); *United States v. Pappas*, No. 17-CR-67 (LDH), 2020

WL 5658775, at *2 (E.D.N.Y. Sept. 23, 2020) (granting compassionate release to defendant convicted of manufacturing marijuana based on non-violent nature of crime, defendant's minimal criminal history, and evidence of significant family ties). *Cf. United States v. Tisdale*, No. 15-CR-334 (RA), 2020 WL 5441584, at *1 (S.D.N.Y. Sept. 9, 2020) (denying motion by defendant with chronic history of hypertension and high cholesterol because Court could not conclude that he was not a danger to the safety of the community).

The Government acknowledges that Baez faces an increased risk of severe harm from COVID-19 at the MDC but contends that the § 3553(a) factors outweigh justification for early release. As the Court noted at sentencing, Baez's underlying crimes are undoubtedly serious. He was an activate participant in two different drug conspiracies that shipped marijuana and cocaine to New York. *See* Dkt. 279 at 16. The Court nonetheless finds that the sentencing factors weigh in favor of a § 3582(c)(1)(a) reduction in this case. Baez is a first-time offender with no history of violence. He pleaded guilty and accepted responsibility for his conduct. At sentencing, Baez acknowledged that his involvement in the drug trade was a mistake that caused grave harm to his community, and apologized to "[e]very single person that purchased the drugs [he] introduced into the market." *See* Dkt. 279 at 15. The efforts undertaken by Baez to better himself while incarcerated provide additional justification for a sentence modification. At his sentencing hearing, the Court noted the "positive strides" that Baez had made in 18 months of incarceration, by tutoring other inmates and completing various courses including a child support seminar. *See* Dkt. 279 at 18. In his motion, Baez attests that he has continued on this positive trajectory in the 18 months since then, having "taken nearly every course or program offered to him" and "taught his fellow inmates how to read and write so they can pass the GED and learn to speak English." *See* Def's Mot. at 17. Appended to his motion is evidence of an impressive array of

accomplishments while in prison. *See* Dkt. 320-31, 320-32. The Government does not dispute Baez's efforts at rehabilitation, nor does it allege that he has any disciplinary history. As was evident at sentencing, Baez has significant ties to his community and to his family, including an eight-year old daughter and a partner of more than fifteen years. Considered alongside his exemplary behavior over the past three years, and the non-violent nature of his underlying crimes, these factors suggest to the Court that Baez is unlikely to pose a danger to the safety of the community upon his release from prison.

Lastly, of the eleven co-defendants indicted alongside Baez for their participation in the charged drug conspiracies, all of those who have been sentenced have now completed their terms of imprisonment or been transferred to residential reentry centers. None of them served more than the 36 months that Baez has already spent incarcerated. Notably, Esteban Ayala, another co-defendant involved in both conspiracies, was released to a residential reentry center on September 2, 2020. The Government argues that Baez's comparatively longer sentence reflects the fact that his conduct made him more culpable than his co-defendants. *See* Gov't Opp. at 7. The Court disagrees, finding instead that "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a), weighs in favor of compassionate release in this instance. Although Baez played a leadership role in the drug distribution operation, the Court cannot conclude that his behavior was so significantly more culpable so as to justify such a gulf in punishment between him and his co-defendants. That Baez has never been alleged to have engaged in any prior criminal conduct—or violent conduct—bolsters this finding.

The § 3553(a) factors thus support a reduction in Baez's sentence.

## CONCLUSION

For the foregoing reasons, Baez's motion for compassionate release is GRANTED. His previously imposed sentence is reduced to time served. As requested in his motion, Baez shall be placed on supervised release status with home confinement until April 26, 2026, the date on which he was expected to complete his custodial sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (authorizing the Court to "reduce the term of imprisonment (and [] impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)"). All other terms of supervised release previously imposed shall also apply. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 320.

SO ORDERED.

Dated:   November 9, 2020
         New York, New York

                                          Ronnie Abrams
                                          United States District Judge